## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SANDRA HIDENRICK,** individually and on behalf of all others similarly situated, <br><br>      *Plaintiff,* <br><br> *v.* <br><br> **AFFILIATED MONITORING, INC.,** a New York corporation, and **LIFESTATION, INC**., a New York corporation, <br><br>      *Defendants*. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Sandra Hidenrick ("Plaintiff" or "Hidenrick") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants Affiliated Monitoring, Inc. ("Affiliated") and LifeStation, Inc. ("LifeStation"; together with Affiliated, "Defendants") to cause Defendants (1) to stop their practice of using an automatic telephone dialing system to place calls to the cellular telephone numbers of consumers nationwide without their prior express written consent; (2) to adhere to consumers' requests that Defendants stop calling them; (3) to stop calling consumers on the National Do No Call registry without their prior express written consent; (4) to provide redress for all persons injured by their conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1.   Plaintiff Hidenrick is a Rancho Cordova, California resident.

2.     Defendant Affiliated is a New York corporation headquartered in Union, NJ. Defendant conducts business throughout this District, the State of New Jersey, and the United States.

3.     Defendant LifeStation is a New York corporation headquartered in Union, NJ. Defendant conducts business throughout this District, the State of New Jersey, and the United States.

## JURISDICTION AND VENUE

4.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, because it arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

5.     This Court has personal jurisdiction over both Defendants because Defendants are headquartered in this District, solicit consumers in this District, made and continue to make unwanted autodialed solicitation calls from and to this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

6.     Venue is proper in this District under 28 U.S.C. § 1391(b) because both Defendants are headquartered within this District and market to this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## COMMON ALLEGATIONS

7.     Defendants contact consumers *without their prior express written consent* in an effort to solicit them to purchase alarm monitoring services.

8.     Defendants conducted (and continue to conduct) a wide-scale solicitation campaign that features the repeated making of unwanted autodialed phone calls to consumers' cellular telephones without their prior express written consent, all in violation of the TCPA.

9.      By making these autodialed calls, Defendants caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

**Affiliated and LifeStation Operate as a Single Entity**

10.     Upon information and belief, the two Defendants, Affiliated and LifeStation, are actually one entity and/or are engaged in a principal-agent relationship in connection with their illegal telemarketing practices intended to insulate them from liability.

11.     For example, Affiliated refers to itself interchangeably as Affiliated and as LifeStation: [3]

---

[3] Affiliated Monitoring Member Page, Union Township Chamber of Commerce, https://www.unionchamber.com/directory/safety-security-systems/248-lifestation-inc.



12.     Affiliated and LifeStation *jointly* hire employees:[4]

---

[4] Affiliated Job Posting, LinkedIn, https://www.linkedin.com/jobs/view/573589140.

## Part - Time Data Entry Specialist

Affiliated Monitoring · Union, NJ, US

Posted 2 months ago · 7 views

Be an early applicant

**Save**   **Apply**

### Job description

Do you want to make an impact? LifeStation, Inc. is meeting the needs of
the growing older adult population in the United States. Our innovative
technology and services transform the lives of seniors and help them
live safe and independent lives. LifeStation Inc. is one of the largest
providers of medical alert monitoring and telehealth technology services
in the United States.

LifeStation, a leading national provider of medical alert services, has an
exciting opportunity to join our growing team as a part-time data entry
specialist on the account management team. This position offers you the
opportunity to play an important role in the fastest-growing channel in
the company – government sponsored and partner programs. LifeStation

**Seniority Level**
Entry level

**Industry**
Marketing and Advertising,
Staffing and Recruiting,
Financial Services

**Employment Type**
Part-time

**Job Functions**
Administrative

See more ⌄

## Inside Sales Associate - $50k

Affiliated Monitoring · Union, NJ, US

Posted 2 months ago · 4 views

Be an early applicant

**Save**   **Apply**

### Job description

Do you want to make an impact? Headquartered at a state-of-the-art
campus in Union, New Jersey, LifeStation is meeting the needs of the
growing older adult population in the United States. Our innovative
technology and services transform the lives of seniors and help them
live safe and independent lives LifeStation Inc. is one of the largest
providers of medical alert monitoring and telehealth technology services
in the United States.

**Seniority Level**
Entry level

**Industry**
Marketing and Advertising,
Staffing and Recruiting,
Financial Services

13.    This results in Affiliated and Lifestation regularly *sharing* employees at all levels of their operation:[7]



[7] "LifeStation Inc / Affiliated" Search Results, LinkedIn,
https://www.linkedin.com/search/results/index/?keywords=LifeStation%2C%20Inc.%20%2F%20Affiliated%20Monitoring.

14.     In fact, both companies share the identical management team: Michael Zydor and Harvey Cohen.[9]

15.     Defendants also share marketing and promotional materials:[14]




16.     In sum, Affiliated and LifeStation are a single entity operating under two names and/or engaged in a principal-agent relationship, with both being aware of, and ratifying the conduct of, the other.

**Defendants use an Autodialer to Call Consumers in Violation of the TCPA**

17.     Defendants expressly acknowledge using a "Fully Redundant Avaya S8800 servers with Aura Communications Manager," which is a type of automatic telephone dialing system ("ATDS" or "autodialer"), as part of their business.[21]

---

[9] LifeStation verified Better Business Bureau profile identifying Zydor and Cohen as Program Director and Vice President, respectively, available at: https://www.bbb.org/new-jersey/business-reviews/medical-alarm/lifestation-inc-in-union-nj-90154234; LinkedIn profile for Zydor identifying him as Managing Director of Affiliated, available at: https://www.linkedin.com/in/michael-zydor-17839172/; LinkedIn profile for Cohen identifying him as Vice President at Affiliated, available at: https://www.linkedin.com/in/harvey-cohen-9aa7261b/.

[14] Working at LifeStation, Youtube, https://www.youtube.com/watch?v=8aNbcYLBlsU; https://www.youtube.com/watch?v=wfWpG_a_lnM.

[21] https://www.affiliated.com/about-affiliated/monitoring-center/

18.     As Avaya explains in its marketing materials, Defendants' autodialer eliminates manual dialing and otherwise automates the calling process:[22]

## Key Customer Benefits

- Improve worker efficiency and productivity by eliminating manual dialing and driving all communication operations to a single desktop interface (i.e., Microsoft Communicator or IBM Sametime client).

---

**Effectively Managing Communications During a Service Outage**
Consider a new approach to managing customer relationships during service outages. We walk through the limitations of traditional approaches for handling call volume fluctuations. And spotlight new capabilities in intelligent call routing and voice portal platforms that can automate and simplify your entire customer experience, supporting interactions across a variety of channels

19.     In practical terms, the Aura Communications System that Avaya provides has the capacity to store or generate numbers to be called using a random or sequential number generator.

20.     On information and belief, Defendants use the Avaya system to autodial consumers and solicit their purchase of alarm monitoring services without consumers' prior express written consent.

21.     A number of complaints have been posted online from consumers that received telemarketing calls from Defendants:

---

[22] Avaya Aura Application Enablement Services, https://www.avaya.com/AvayaScripts/webtrends/track-pdf.html?f=/en/documents/avaya-aura-application-enablement-services---uc4303.pdf; Avaya Aura Communication Manager System, https://www.avaya.com/en/product/avaya-aura-communication-manager/?view=resources.

- "I e-mailed for information and since then I have received 4-5 phone calls daily. I've phoned and requested to be placed on their internal no call list four times."[25]

- "When I started to research life-alert devices, I kept getting calls – multiple times per day – from LifeStation."[26]

- "I keep getting phone calls from this number in the evening and again in the morning, 3 rings then stop. Never leave a message."[27]

- "get call out of this number once or twice a daytime for last 2 weeks. No one on the other end the only occasion I picked up. No message. ever."[28]

- "Four phone calls per night[.] If this is what happens when they get your phone number just imagine what will happen when they get your credit card."[29]

22.     Defendants place calls from telephone number 916-526-2131, among others.

23.     Defendants made (and continue to make) autodialed solicitation calls to cellular telephones without the prior express written consent of the call recipients.

24.     In so doing, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Classes, but also repeatedly violated the TCPA.

25.     Even worse, when a consumer asks for the calls to stop, the Defendants continue calling anyway.

**FACTS SPECIFIC TO PLAINTIFF SANDRA HIDENRICK**

26.     Plaintiff Hidenrick registered her cellular number on the National Do Not Call Registry on July 27, 2003 in order to avoid receiving unsolicited telemarketing calls.

27.     On October 23, 2017 Plaintiff Hidenrick called Defendants at phone number 866-880-6198 to inquire about purchasing a medical alert system for her elderly sister. During that

---

[25] https://www.yelp.com/biz/lifestation-brooklyn-2
[26] https://www.bbb.org/new-jersey/business-reviews/medical-alarm/lifestation-inc-in-union-nj-90154234/reviews-and-complaints?section=complaints
[27] https://800notes.com/Phone.aspx/1-617-825-4136
[28] https://numberrecords.com/8778332020.tel
[29] https://www.fightingspam.me/phone/877-833-2020

call, Plaintiff indicated that she was not interested in purchasing Defendants' goods and/or services.

28.     On October 24, 2017, Plaintiff received two calls to her cellular phone from Defendants promoting Defendants' alarm monitoring services.  Specifically, the calls were from a "LifeStation" agent who wanted to sell Plaintiff a medical alert system.  On the first call, Plaintiff Hidenrick did not have the time to speak to the agent and she ended the call. On the second, Plaintiff told the agent that she would not purchase a medical alert system, making it clear that she was not interested and that she wanted the calls to stop.

29.     Despite Plaintiff's request for the calls to stop, Defendants continued to call her *twice daily* from October 24, 2017 through December 23, 2017 and from January 16, 2018 through February 7, 2018.

30.     On February 7, 2018 Plaintiff Hidenrick answered a call from 916-526-2131. When she answered the call, there was an audible silence followed by a noticeable "click"—both indicative of the use of an autodialer—after which a female agent said, "Hello, Sandy?" Plaintiff Hidenrick answered, "Please don't call this number any longer" and hung up the phone.

31.     Plaintiff never provided Defendants with any form of consent (let alone written consent) to place autodialed calls to her cellular phone.

32.     In addition, Plaintiff made it clear to the Defendants that she was not interested in their products by October 24, 2017, at the latest.

33.     Thus, Defendants not only call consumers without their prior consent, and notwithstanding their registration on the National Do Not Call registry, but also continue to call those consumers after they request that these nonconsensual calls stop.

34.     Seeking redress for these injuries, Hidenrick, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA, seeking an injunction requiring

Defendants to cease all unsolicited autodialed telephone calling activities and an award of

statutory damages to the class members, together with costs.

### CLASS ALLEGATIONS

35.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2)

and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of

the following Classes:

> **Autodialed No Consent Class:** All persons in the United States who,
> from four years prior to the filing of this action through the present, (1)
> Defendants (or a third person acting on behalf of Defendants) called, (2)
> on the person's cellular telephone, (3) using an autodialer, (4) for the
> purpose of selling Defendants' products and/or services, and (5) for whom
> Defendants claims they obtained prior express written consent in the same
> manner as Defendants claims they supposedly obtained prior express
> written consent to call the Plaintiff or do not claim to have consent.

> **Autodialed Stop Class**: All persons in the United States who from, four
> years prior to the filing of this action to the present, (1) Defendants (or a
> third person acting on behalf of Defendants) called, (2) on the person's
> cellular telephone, (3) using an automated telephone dialing system, (4)
> after the person informed Defendants that s/he no longer wished to receive
> phone calls from Defendants.

> **Do Not Call Registry Class**: All persons in the United States who, from
> four years prior to the filing of this action through the present, (1) received
> more than one call made by or on behalf of Defendants within a 12-month
> period, (2) for the purpose of selling Defendants' products and/or services,
> (3) after his/her telephone number(s) was registered with the National Do
> Not Call registry for at least thirty days, and (4) for whom Defendants
> claims they obtained prior express written consent in the same manner as
> Defendants claims they supposedly obtained prior express written consent
> to call the Plaintiff or do not claim to have consent.

36.    The following individuals are excluded from the Classes: (1) any Judge or

Magistrate presiding over this action and members of their families; (2) Defendants, their

subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their

parents have a controlling interest and their current or former employees, officers and directors;

(3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion

from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

37.    **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed autodialed solicitation calls to thousands of consumers who fall into the definitions of the Classes. Members of the Classes can be easily identified through Defendants' records.

38.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)  whether Defendants' conduct constitutes a violation of the TCPA;

(b)  whether Defendants systematically made telephone calls to members of the Classes without first obtaining prior express consent to make the calls;

(c)  whether Defendants utilized an automatic telephone dialing system to make their calls to members of the Classes; and

(d)  whether Defendants made autodialed telephone calls to members of the Classes after being told to stop calling.

39.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so.

40.     **Appropriateness**: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227 *et seq.*)
### (On Behalf of Plaintiff and the Autodialed No Consent Class)

41.     Plaintiff incorporates paragraphs 1 through 40 as if fully set forth herein.

42.     Defendants made autodialed solicitation telephone calls to cellular telephone numbers belonging to Plaintiff and other members of the Autodialed No Consent Class without first obtaining prior express written consent to make such calls.

43.     Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive

and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

44.     By making the unwanted solicitation telephone calls to Plaintiff and the Autodialed No Consent Class members' cellular telephones without their prior express consent, and by utilizing an autodialer to make those calls, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

45.     As a result of Defendants unlawful conduct, Plaintiff and the members of the Autodialed No Consent Class are each entitled a minimum of Five Hundred Dollars ($500.00) in damages for each such violation of the TCPA.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed Stop Class)**

46.     Plaintiff incorporates paragraphs 1 through 40 as if fully set forth herein.

47.     Defendants placed unsolicited and unwanted calls to telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Class on their cellular telephones after they had informed Defendants by phone to stop contacting them.

48.     Defendants placed the calls using equipment that had the capacity to store or produce telephone numbers to be called and/or texted using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

49.     By placing unsolicited phone calls to Plaintiff and other members of the Autodialed Stop Class's cellular telephones using an automated telephone dialing system after they requested to no longer receive such calls, Defendants violated 47 U.S.C. § 227(b)(1)(B) by doing so without prior express written consent.

50.     As a result of Defendants unlawful conduct, Plaintiff and the members of the Autodialed Stop Class suffered actual damages in the form of monies paid to receive the

unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each

entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

51.     Should the Court determine that Defendants conduct was willful and knowing, the

Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by

Plaintiff and the other members of the Autodialed Stop Class.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Stop Class)**

52.     Plaintiff incorporates paragraphs 1 through 40 as if fully set forth herein.

53.     Defendants violated 47 C.F.R. §64.1200 by initiating calls for telemarketing

purposes to cellular telephone subscribers such as Plaintiff and the Do Not Call Registry Class

who were registered on the National Do Not Call Registry, and who received two or more

additional calls within a 12-month period from Defendants without their consent. Defendants

made these calls without instituting procedures that comply with the regulatory minimum

standards for maintaining a list of persons who should not be called.

54.     As a result of Defendants' unlawful conduct, Plaintiff and the Do Not Call

Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), Plaintiff and each

member of the Do Not Call Registry Stop Class are each entitled to receive up to $500 in

damages for each violation of 47 C.F.R. § 64.1200.

55.     Should the Court determine that Defendants conduct was willful and knowing, the

Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by

Plaintiff and the other members of the Do Not Call Registry Stop Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the

following relief:

a) An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes, and appointing her counsel as Class Counsel;

b) An order declaring that Defendants' actions, as set out above, violate the TCPA;

c) A declaratory judgment that Defendants' telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

d) An award of statutory damages;

e) An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

f) An injunction requiring Defendants to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Class;

g) Such other and further relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**SANDRA HIDENRICK**, individually and on behalf of classes of similarly situated individuals

Dated: June 28, 2018

By: _/s/ Stefan Coleman_____
Stefan Coleman
Law Offices of Stefan Coleman, P.A.
law@stefancoleman.com
1072 Madison Ave. Suite 1
Lakewood, NJ 08701
Phone: (877) 333-9427
Fax: (888) 498-8946

Avi R. Kaufman*
Kaufman P.A.
kaufman@kaufmanpa.com

400 NW 26th Street
Miami, FL 33127
Phone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

*Motion for admission *pro hac vice* forthcoming